IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


**LEVI LOVE,**

           **Plaintiff,**

     **v.**                              **CASE NO.  06-3210-SAC**

**ROGER WERHOLTZ,**
**Secretary of Corrections,**
**et al.**

           **Defendants.**

### MEMORANDUM AND ORDER

    This civil rights complaint, 42 U.S.C. 1983, was filed by an inmate of the El Dorado Corrections Facility, El Dorado, Kansas (ECF). Plaintiff names numerous defendants including the State of Kansas, the Kansas Secretary of Corrections, the Kansas Department of Corrections, the Warden at ECF, and several other employees at ECF and the Hutchinson Correctional Facility (HCF).

    Generally, Mr. Love complains of his placement and continued confinement in administrative segregation (ad seg), and conditions in the ad seg unit at ECF. Specifically, he complains of numerous aspects of decisions involving his ad seg status[1], and numerous

---

[1] Plaintiff alleges his problems began after he was given a disciplinary report (DR) for allegedly threatening and intimidating a mental health counselor, and for allegedly forging an affidavit claiming a sexual relationship between them. He claims the affidavit disappeared, and the signature on it matched hers. He further alleges he was sent to ECF from HCF, and placed in ad seg "for allegedly flirting with" a female and allegedly writing threatening Form 9's, after he started complaining about violation of his religious and legal rights. He complains he never saw the allegedly threatening Form 9's, no disciplinary report was written, and he was not charged with criminal conduct. He further complains that the Warden at HCF never explained in writing the threat he posed nor showed justification, and never signed any of the ad seg review sheets while he was in ad seg at HCF. He also states the "narrative report" regarding the reasons for placing him in ad seg falsely provided he "has a long history of threatening female staff," since 1992; and that he had "committed a crime of forgery, a felony." He also claims more "lies" were added in September, 2003, including a history of violence and gang activity in prison, after ECF learned he was going to litigate.

    Plaintiff admits he later received several other DRs, but alleges none were violent or

conditions in the ad seg unit[2].

As factual background, Mr. Love alleges on March 17, 2003, he was placed in administrative segregation on "OSR" (Other Security Risk) at HCF "under false pretense, without a disciplinary report or charge" for alleged threats, and was then transferred to ECF. He further alleges ECF continues to hold him "under those false pretenses," and under "the guise" that he received two disciplinary

---

threatening. He claims ECF is using "fabricated unsats" and "falsifying documents to continue holding (him)."

Plaintiff also complains that the regulations governing OSR status do not allow an inmate to examine the alleged evidence, confront accusers, compel an investigation, present evidence, have a representative assist him, or appeal.

[2]

Plaintiff complains of the following conditions in "EDCF Supermax": (1) confinement alone in his cell for 23 hours a day; (2) outdoor exercise being limited to one hour daily 5 times a week; (3) not being allowed to use recreation equipment or engage in team sports like general population (gen pop); (4) being escorted to an exercise cage and to shower; (5) eating all meals alone, which "are not always hot," since they are transported from the kitchen and guards can delay delivery out of spite, while gen pop inmates enjoy hot meals; (6) more limited access to canteen items than gen pop; (7) communication between inmates being limited to yelling from cell to cell; (8) resulting noise levels sometimes preventing peace of mind and sleep; (9) the cell house smelling like urine and feces due to inmates throwing these substances on the run; (10) inmates with contagious diseases not being separated from healthy ones and they share many things making infection possible; (11) the outdoor cages being unclean and unsanitary; (12) cell vents being filthy; (13) lack of same access to legal material including no access to the law library or typewriters provided to gen pop; (14) denial of contact visits and contact with other inmates allowed in gen pop; (15) inside exercise room having no bathroom, not meeting height requirements or having opening in ceiling to see the sky; (16) not being allowed to take photos like gen pop; (17) not being allowed to take showers every day; (18) not being allowed to participate in religious activity; (19) not being allowed to work minimum wage jobs like gen pop; (20) not being allowed to wear clothing like gen pop; (21) not being allowed to participate in food drive, yet asked to donate to food drives; (22) not given privacy to talk to mental health and dental professionals like gen pop; (23) having a negative impact on parole; (24) not being allowed to clean cell every day like gen pop; (25) program to re-intergrate inmates with gen pop is biased and inadequate; (26) the majority of inmates illegally detained in ad seg are black and mexican; (27) "most whites are chosen above others to go to the IMU program; (28) only about 9 to 12 inmates of the 384 in "Supermax," are in the IMU program; (29) whites are given jobs "unrestrained," while all blacks and mexicans are restrained at first; (30) ECF officials deliberately provoke violent incidents in ad seg; (31) ECF officials refuse to release inmates illegally confined in ad seg "pursuant to federal law."

Plaintiff further claims his "physical health is getting bad from long term exposure to filthy air coming from cell vents full of dust." He states he constantly complains to medical staff about his health.

Plaintiff further claims his continued placement in ad seg adversely impacts "mandatory goals" under K.S.A. 75-5201, including the programs and training offered to him, his prospects for rehabilitation, his ability to prepare for return to the streets, his ability to improve his work habits, education, mental and physical health and attitude, and his treatment by staff.

2

reports or "unsats while in supermax." He complains he is given "sham" monthly and six-month periodic reviews, and no meaningful review has ever been held. He further claims he has been held in ad seg over two years, which he asserts is "way over the 305 days mandate set by the federal." He further claims he is being held in ad seg to punish him "under psychological and physical conditions unhealthy, which is atypical hardship violating" the Fifth, Eighth and Fourteenth Amendments.

As legal support for his claims, plaintiff cites Kansas administrative regulations as providing that administrative segregation shall not be used as punishment, that a written explanation and justification must be made for placing an inmate in ad seg as OSR, and when an inmate is confined in ad seg for engaging in behavior which threatens the security or control of the facility, the warden must explain the threat in writing and show justification. He also cites McClary v. Kelly, 4 F.Supp.2d 195 (WDNY 1998), aff'd, 237 F.3d 185 (2d Cir. 2001), in which a state inmate was awarded $660,000 in damages for being held in ad seg for over four years with no meaningful review.

Plaintiff asserts that the ECF needs to be investigated "by the federal." He cites 42 U.S.C. 1997 as authorizing the Attorney General to conduct investigations and litigations relating to confinement in state institutions. Plaintiff seeks money damages for alleged fraud; conspiracy by all defendants to hold him indefinitely in ad seg; gross negligence; denial of due process in providing no meaningful review and holding him over 305 days under psychological and physical unhealthy conditions; violation of equal protection with regard to conditions afforded general population

3

inmates; and "slander/libel" for false, misleading information damaging his good overall prison reputation from his good conduct and hard work over the years of incarceration.  He also asks that a fine be assessed and the money given to the Salvation Army.

Plaintiff seeks injunctive relief including a permanent injunction preventing defendants from harassing or retaliating against him for filing this action, expungement of all KDOC and Parole Department records "of false subject matters," and transfer to LCF, not HCF, NCF, ECF, OR EDCF.

Mr. Love generally alleges he has "exhausted all remedies pursuant to an emergency grievance, 44-15-106."

**SCREENING**

Because Mr. Love is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. 1915A(a) and (b).  Having screened all materials filed, the court finds the complaint is subject to being dismissed for the following reason.

**FAILURE TO ADEQUATELY PLEAD EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Plaintiff has not sufficiently pled exhaustion of administrative remedies in his complaint.  42 U.S.C. 1997e(a) directs: "No action shall be brought with respect to prison conditions under (any federal law) by a prisoner confined in any (correctional facility) until such administrative remedies as are available are exhausted."  See Booth v. Churner, 531 U.S. 956

4

(2001)(section 1997e(a) requires prisoners to exhaust administrative remedies irrespective of the relief sought and offered through administrative channels). The United States Supreme Court has held that this exhaustion requirement is mandatory and may not be disregarded by the court. Porter v. Nussle, 534 U.S. 516, 520 (2002). Exhaustion under Section 1997e(a) is a pleading requirement imposed upon the prisoner plaintiff. Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1210 (10th Cir. 2003), cert. denied, 543 U.S. 925 (2004). It follows that a complaint that fails to adequately plead exhaustion amounts to one that fails to state a claim upon which relief can be granted. Id. The pleading requirement of 1997e(a) mandates that a prisoner either "attach a copy of the applicable administrative dispositions to the complaint, or . . . describe with specificity the administrative proceeding and its outcome." Id. The Tenth Circuit has also determined that "total" exhaustion is required. Ross v. County of Bernalillo, 365 F.3d 1181, 1188,-89 (10th Cir. 2004). Under the total exhaustion prerequisite, plaintiff must have presented each and every claim raised in his complaint by way of the available prison or detention facility administrative grievance procedures, or the complaint is subject to being dismissed without prejudice. In addition, he must have referred to the named defendants and described their allegedly wrongful actions in those grievances.

The two footnotes detailing plaintiff's claims contain approximately 60 complaints. Plaintiff must have presented and appealed every one of these complaints to prison staff and the Kansas Department of Corrections by way of the administrative grievance procedures available at the prison. Plaintiff shall be

given time to adequately plead exhaustion by either providing copies of the administrative grievances and appeals filed by him on every one of his claims and the responses he received to those grievances, or by describing in detail the administrative processes he followed and the grievances he filed together with the responses.  If plaintiff fails to adequately show total and complete exhaustion, the complaint is subject to being dismissed, without prejudice.

**IT IS THEREFORE BY THE COURT ORDERED** that within thirty (30) days, plaintiff must show cause why this action should not be dismissed for failure to adequately plead exhaustion of administrative remedies as discussed in the foregoing Memorandum and Order.

**IT IS SO ORDERED**.

Dated this 15th day of August, 2006, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge