IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LEVI LOVE,

                              Plaintiff,

            v.                          CASE NO.  06-3210-SAC

ROGER WERHOLTZ,
Secretary of Corrections,
et al.

                    Defendants.

## MEMORANDUM AND ORDER

This civil rights complaint, 42 U.S.C. 1983, was filed by an inmate of the El Dorado Corrections Facility, El Dorado, Kansas (EDCF).  Plaintiff names numerous defendants including the State of Kansas, the Kansas Secretary of Corrections (SOC), the Warden at EDCF, and several other employees at EDCF and the Hutchinson Correctional Facility (HCF).

## CLAIMS

Generally, Mr. Love complains of his placement and continued confinement in administrative segregation (ad seg), and numerous conditions in the ad seg unit at EDCF.  These complaints were set forth in detail in footnotes 1 and 2 of the court's prior order entered on August 15, 2006 (Doc. 3).

## MOTION TO PROCEED IN FORMA PAUPERIS

Plaintiff has filed a Motion for Leave to Proceed Without

Prepayment of Fees (Doc. 2), and attached an Inmate Account Statement in support, as statutorily mandated. Section 1915(b)(1) of 28 U.S.C., requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action. Having examined the records of plaintiff's account, the court finds the average monthly deposit to plaintiff's account is $12.66 and the average monthly balance is $82.14. The court therefore assesses an initial partial filing fee of $16.00, twenty percent of the average monthly balance, rounded to the lower half dollar[1]. Plaintiff shall be given time to pay this partial fee. If it is not paid in the time provided, this action may be dismissed without further notice.

**SCREENING**

Because Mr. Love is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. 1915A(a) and (b). Having screened all

---

[1]

Pursuant to 28 U.S.C. §1915(b)(1), plaintiff will remain obligated to pay the full $350.00 district court filing fee in this civil action. Being granted leave to proceed in forma pauperis entitles him to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. §1915(b)(2). Plaintiff currently owes an outstanding balance in <u>Love v. Werholtz</u>, Case No. 03-3291, and collection in this case will begin as soon as the balance in the older case is paid in full.

materials filed, the court finds as follows.

## 1.      **SOME REQUESTED RELIEF INAPPROPRIATE**

Plaintiff asserts that the EDCF needs to be investigated "by the federal." He cites 42 U.S.C. 1997 as authorizing the Attorney General to conduct investigations and litigations relating to confinement in state institutions. Plaintiff seeks money damages for fraud; gross negligence; "slander/libel" with false, misleading information damaging his reputation for good conduct and hard work during his years of incarceration; denial of due process in providing no meaningful review[2] of his ad seg status; holding him in ad seg over 305 days; conspiracy by all defendants to hold him indefinitely in ad seg; subjecting him to psychologically and physically, unhealthy conditions; and violation of equal protection with regard to conditions afforded general population inmates. He additionally asks that a fine be assessed, and the money given to the Salvation Army. Plaintiff also seeks an injunction preventing defendants from harassing or retaliating against him for filing this action, expungement of all KDOC and parole department records "of false subject matters," and transfer to LCF, not HCF, NCF, ECF, OR EDCF.

At the outset, the court finds some of the relief sought by plaintiff should be denied either because it is not available in

---

[2]

Plaintiff cites <u>McClary v. Kelly</u>, 4 F.Supp.2d 195 (WDNY 1998), <u>aff'd</u>, 237 F.3d 185 (2d Cir. 2001), in which a state inmate was awarded $660,000 in damages for being held in ad seg for over four years with no meaningful review.

this federal civil rights action or is not supported by the factual allegations in the complaint.   There is no cause of action for simple negligence, fraud, libel, or slander under 42 U.S.C. 1983, which requires a violation of federal law.   See e.g., Davidson v. Cannon, 474 U.S. 344, 347-48 (1986); Paul v. Davis, 424 U.S. 693, 708-09 (1976).   Such claims are matters of state tort law.   Id. at 712.   This court has no authority to require the Attorney General to exercise his discretion to investigate or litigate under 42 U.S.C. 1997(a), to impose a fine payable to the Salvation Army, or to designate the place of Mr. Love's confinement.   Accordingly, these particular requests for relief should be dismissed for failure to state a valid claim for relief.


**2.      EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Mr. Love generally alleged in his complaint that he has "exhausted all remedies pursuant to an emergency grievance, 44-15-106[3]."   The court initially found that exhaustion under 42 U.S.C. § 1997e(a) was a pleading requirement imposed upon the prisoner plaintiff, and Mr. Love had not sufficiently pled exhaustion, citing Booth v. Churner, 531 U.S. 956 (2001), Porter v. Nussle, 534

---

[3]

Plaintiff has filed documents which appear to contradict his conclusory allegation that he exhausted administrative remedies on all his claims prior to filing this lawsuit.  The "emergency grievance" referred to by him as Exhibit 22 was submitted to prison authorities on April 11, 2006, and is attached to his complaint.  Plaintiff alleges he raised all his claims in this grievance.  However, it does not contain complaints about particular conditions in EDCF Supermax.  Instead, the only claims are that plaintiff was improperly placed in ad seg, was being illegally held in ad seg, and that his detention in ad seg for over "305" days has subjected him to "psychological and physical harm that can't be repaired."

U.S. 516, 520 (2002), and <u>Steele v. Federal Bureau of Prisons</u>, 355 F.3d 1204, 1210 (10th Cir. 2003), <u>cert</u>. <u>denied</u>, 543 U.S. 925 (2004). Plaintiff was ordered to either provide copies of the administrative grievances and appeals filed by him on all his claims and the responses he received, or describe them in detail. He was advised that if he failed to show exhaustion, the complaint was subject to being dismissed, without prejudice.

Plaintiff filed a Response to the court's Memorandum and Order with numerous copies of administrative grievances and responses attached. Over three months later the United States Supreme Court decided <u>Jones v. Bock</u>,__ U.S. __, 127 S.Ct. 910 (Jan. 22, 2007). <u>Jones</u> held that an inmate's failure to exhaust under 42 U.S.C. 1997e(a) is an affirmative defense, i.e., "the inmate is not required to specially plead or demonstrate exhaustion in his complaint." Accordingly, this action may not be dismissed by the court during the screening process for failure to adequately plead or demonstrate exhaustion[4].

**3.      SOME CLAIMS BARRED BY STATUTE OF LIMITATIONS**

The court finds it apparent from the face of the complaint that some of plaintiff's claims are time barred by the statute of limitations. State law determines the applicable statute of limitations for Section 1983 actions. See <u>Board of Regents v.</u>

---

[4]

After the court issued its show cause order to plaintiff requiring demonstration of exhaustion, Mr. Love submitted a grievance at the prison regarding the conditions of which he complains.

<u>Tomanio</u>, 446 U.S. 478, 485 (1980); <u>Fratus v. DeLand</u>, 49 F.3d 673, 675 (10th Cir. 1995).   Generally, "the appropriate statute of limitations for § 1983 actions arising in Kansas is two years, under Kan.Stat.Ann. § 60-513(a)(4)."   <u>Johnson v. Johnson County Comm'n Bd.</u>, 925 F.2d 1299, 1300-01 (10th Cir. 1991); <u>see</u> <u>Hamilton v. City of Overland Park</u>, 730 F.2d 613, 614 (10th Cir. 1984), <u>cert</u>. <u>denied</u>, 471 U.S. 1052 (1985).   This two-year limitations period begins to run "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."   <u>Industrial Constructors Corp. v. Bureau of Reclamation</u>, 15 F.3d 963, 969 (10th Cir. 1994).

Plaintiff commenced this action on July 25, 2006, and his claims arising more than two years prior to that date appear from the face of the complaint to be time barred.   It follows that all Mr. Love's claims based upon actions and inactions of defendants at HCF prior to and during his initial placement in ad seg[5], as well as the acts of all defendants taken in connection with his

---

[5]

Plaintiff cites Kansas Administrative Regulations as requiring that when an inmate is placed in ad seg as OSR (Other Security Risk) for engaging in behavior which threatens the security or control of the facility, the warden must explain the threat in writing and show justification. He complains regulations were not complied with at the time of his initial placement in ad seg. Even accepting these allegations as true, plaintiff's claims based thereon are barred by the statute of limitations since his initial placement occurred in 2003. Plaintiff also alleges his initial placement in ad seg at HCF as OSR was "under false pretense, without a disciplinary report or charge" for alleged threats, and he was then transferred to "supermax" at EDCF. Mr. Love was transferred to EDCF in June, 2003. As noted, plaintiff may not recover money damages or the other relief he seeks based upon claims relating to his 2003 initial placement. Furthermore, the failure to comply with state prison regulations does not amount to a federal constitutional violation. Claims based upon a transfer in 2003 are likewise time barred.

continued segregation[6] and disciplinary charges and proceedings that occurred prior to July 25, 2004, are subject to being dismissed.  Plaintiff will be given time to show cause why his claims arising prior to July 25, 2004, should not be dismissed as time-barred.

**4.     FAILURE TO STATE A CLAIM REGARDING RETENTION IN AD SEG**

Plaintiff's main claim is that his lengthy retention in ad seg violates his constitutional rights.  The court finds for the following reasons that, even taking plaintiff's factual allegations as true regarding his retention in administrative segregation at EDCF, he fails to state a constitutional claim of denial of due process.

**A.     PLAINTIFF'S ALLEGATIONS**

As factual background for his challenge to his long retention in ad seg, Mr. Love alleges EDCF continues to hold him

---

[6]    Plaintiff alleges that Deputy Warden Lumen lied at the 180-day review conducted on September 25, 2003, when he stated Love had a history of gang activity and violence.  He argues he should not have been classified as a member of a security threat group (STG) because he did not meet any of the criteria set out in IMPP Rule 12-105.  His exhibits indicate he challenged his "gang point" in 2001 and 2002.  The administrator's response was that Love had been identified as having a history of gang involvement based on information from the Topeka Police Department and his gang-related criminal conduct.  Thus, plaintiff's denial of gang activity in prison does not refute the finding of a history of gang involvement based upon his offense behavior and conduct prior to his KDOC confinement.  Moreover, any challenge to the basis for his ad seg in 2001 and 2002 appears to be barred by the statute of limitations.  Plaintiff's allegations that the "custody classification sheets and the Program Classification Sheets" from 1992-2000 show he "kept minimum custody" most of the time; that he only had five DRs within that time and none were violent, gang related, or for sex crimes; and that he never "had a gang point or special skills point" likewise relate only to time-barred claims.

there under "false pretenses" and "the guise" that he received two disciplinary reports or "unsats." He additionally complains he is given "sham" monthly and six-month periodic reviews, and claims no meaningful review has ever been held. He alleges he has been in ad seg more than three years, which he asserts is "way over the 305 days mandate set by the federal." He also claims it was illegal to state on classification review sheets that he is a sexual threat to women, without evidence and without trying him in court[7].

**B.   LEGAL STANDARDS**

At the outset, the court notes there is no federal 305-day mandate regarding ad seg, as asserted by plaintiff. While the Court of Appeals for the Second Circuit may have set such a bright-

---

[7]

In a lengthy grievance on this matter exhibited by Mr. Love, he claimed in one sentence:

No evidence to say I am a threat to women and no DR or charge for threat in Reno County to place me in Supermax, and saying a black man flirting with white women is to point to "'Racism," so that leaves the "Delusional" falsehood in the narrative report, which explains the need to "try" to put a professional psychiatrist up under me for one on one's to try preventing the litigation for slander, etc., for I never told Luellen, Epps or Phares that I wanted them or I believed they wanted me, my only intent was to have a one on one to show I am not a threat to women I only flirt, but Epps, Phares, and Luellen had conspired to "try" to get me diagnosed as "delusional" by the male psychiatrist but I refused one on one's with anybody now that I can prove with 100% proof with paperwork, etc., that Ms. Clark of Mental Health started such with the alleged forged letter that disappeared and no forgery charge came in Butler County so I could call on handwriting specialist to prove it was not my signature; and evidence proves 100% that CCS Mental Health staff of HCF, Gena Shorter, Beverly Vestring, etc., had layed (sic) the false foundation in the HCF, behind Mental Health Ms. Clark to later be contrived by the Mental Health of EDCF, Ideker; Luellen; Mental Health Director Weber; Countryman; and Epps but Ms. Phares was careful not to put her signature on paperwork but Epps and Luellen connects Mrs. Phares as being involved in the conspiracy too."

Grievance #14570 submitted to EDCF Unit Team on July 12, 2006, Doc. 6, Exhibit 62, pg. 3.

line standard for the district courts in that Circuit, its opinion in Colon v. Howard, 215 F.3d 227, 231-32 (2d Cir. 2000), did not establish a 305-day rule for prison inmates nationwide.   See Hill v. Fleming, 173 Fed.Appx. 664, 671 (10th Cir. Apr. 04, 2006)(copy attached).   Instead, the question of whether or not a prison inmate's retention in ad seg is in violation of the U.S. Constitution is dependent upon the facts in each particular case.

Claims of illegal retention in administrative segregation are governed by the following legal standards.  A § 1983 plaintiff must prove he was deprived of a right secured by the Constitution and laws of the United States.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970); Hill v. Ibarra, 954 F.2d 1516, 1520 (10th Cir. 1992).  It has been generally held that a prison inmate has no right protected by the U.S. Constitution to remain in general population.  Hewitt v. Helms, 459 U.S. 460, 468 (1983).  More specifically, "[c]lassification of [a] plaintiff into . . . segregation does not involve deprivation of a liberty interest independently protected by the Due Process Clause."  Bailey v. Shillinger, 828 F.2d 651, 652 (10th Cir. 1987), citing Hewitt, 459 U.S. at 468 ("[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence," and "administrative segregation is the sort of confinement . . . inmates should reasonably anticipate receiving at some point in their incarceration.").  Nevertheless, government officials may create a liberty interest protected by the Due Process Clause, but

it is generally limited to prison conditions that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995); Gaines v. Stenseng, 292 F.3d 1222, 1225 (10th Cir. 2002), citing Sandin, 515 U.S. at 484 (States may under certain circumstances create liberty interests protected by the Due Process Clause, but these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.).

However, the analysis of a procedural due process claim is a two-step procedure. Even if Mr. Love proves that he "had a definite liberty or property interest," he must then also prove "that such interest was, under color of state law, abridged without appropriate process." Curtis Ambulance v. Shawnee Co. Bd. of Cty. Com'rs, 811 F.2d 1371, 1375 (10th Cir. 1987), citing Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972). In other words, if sufficient evidence is presented to support the conclusion that confinement in segregation in a particular case meets the Sandin standard, then the issue becomes whether or not procedural due process protections appropriate to the prison context in question were afforded.

C.   **DISCUSSION**

There is little question that the nearly four-year duration of plaintiff's confinement in administrative segregation, in and of itself, is arguably "atypical or significant in relation to the ordinary incidents to be expected while in prison." See Gaines, 292 F.3d at 1225-26, citing Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 809 (10th Cir. 1999).  (The duration alone of confinement in ad seg for 3 years, 305 days, or even 75 days may be assumed to be "atypical and significant.").  Thus, the duration alone in this case precludes a finding upon screening that state prison officials have not created a liberty interest triggering procedural due process rights.  The court would normally proceed to a very careful examination of the conditions of plaintiff's confinement in comparison to the typical conditions of confinement in his prison to determine whether a liberty interest is implicated.

However, this court finds the issue of whether or not Mr. Love possessed a liberty interest need not be fully determined in this case, for the reason that the facts and exhibits submitted by plaintiff show that during his continued confinement in ad seg he was provided with all the procedural due process guaranteed by the Fifth and Fourteenth Amendments.  See Hewitt, 459 U.S. at 460; Sandin, 515 at 484 FN5.  Plaintiff's exhibits plainly demonstrate that he has been provided monthly administrative segregation reviews and 180-day Program Management Committee Reviews of his segregated status.  His completely conclusory allegations that these reviews have been shams are not sufficient to state a denial

of due process.  Mr. Love does not allege that he was denied any particular aspect of procedural due process at the many, regular administrative proceedings, such as notice, the opportunity for a hearing, or a statement of reasons for the decisions.  See Wolff v. McDonnell, 418 U.S. 539 (1974).

What plaintiff does allege is that the substantive decisions to retain him in segregation have been without basis.  In attempting to counter the Administrative Segregation Review Board's (ASRB) finding that he is a sexual threat to female staff members, Mr. Love alleges that disciplinary actions and reports against him have been fabricated, prison employees have fabricated information to retain him in ad seg, "C.C.S. Mental Health Staffs are conspiring along with KDOC officials" to illegally hold him in ad seg, he has never been treated as a sex offender or charged with a crime, and he has had a good conduct and work record at the prison.

Plaintiff does appear to have had a good work record.  His exhibits show that his favorable work record and avoidance of new misconduct reports were considered during each review period.  Mr. Love's own exhibits further reveal that adequate reasons were provided for his initial placement and continuing retention in ad seg.[8]  They also show he is classified as Other Security Risk under

---

[8]

For example, plaintiff's exhibit "20" is a copy of his KDOC Administration Segregation Review before the Segregation Review Board on October 27, 2005.  The reasons for plaintiff's segregation were provided as:

Inmate Love was placed in Administrative Segregation on 3/17/03, upon completion of a disciplinary segregation sentence.  Inmate Love's placement in Administrative Segregation is based on a determination that he presents a threat to female staff members.  Since his return to HCF from EDCF in April, 2002, Inmate Love has

IMPP 20-104I.B.(13), his positive and negative behavior while in segregation has been considered, he has had the opportunity to attend every review and comment as well as to submit a written response to the decision within 3 working days, and reasons were given for each periodic recommendation to retain him in segregation.

Exhibits submitted by plaintiff also reveal that during the two years of his reviews[9] preceding the filing of this action, he either appeared and stated he had nothing to contribute, or refused to even appear[10].  Thus during the great majority of his reviews, due process was provided, but plaintiff failed to take advantage of it.

---

written numerous Form 9's to female staff members that are considered to be attempts to establish relationships.  He has a long history of this behavior, beginning in 1992, and his transfer to HCF was the result of a disciplinary conviction for a forged letter where he claimed that a mental health staff member had initiated a sexual relationship with him.  He has continued this pattern of behavior, claiming most recently that CCII Kroeker has been "flirting" with him.  In addition to his delusional sexual ideation regarding female staff, his writings contain thinly veiled threats that cause concern for the safety of female staff he comes in contact with.  In view of these facts, Inmate Love is considered to be a threat to the safety of female staff and it is recommended that he be transferred to long-term segregation at the earliest possible date.

[9]

The court again notes that claims based upon administrative reviews and  proceedings that occurred prior to July, 2004, are time barred.

[10]

Complaint (Doc. 1), Attachments 36-57 include copies of plaintiff's KDOC Administrative Segregation Reviews, Program Management Committee Reviews, and Program Classification Reviews beginning in July, 2004 through 2005 with the latest dated June 15, 2006 (Attach. 36).  Whether or not Mr. Love attended the reviews and his comments, if he did attend, are recorded on the sheets.  None of these records indicates that plaintiff raised any specific challenges to the reasons or information relied upon at the reviews.  Exhibits of grievances indicate that at some point Mr. Love challenged a DR cited at one review, and that DR was not used at the subsequent review.

In 2006, Mr. Love did file a grievance asserting that the reasons for holding him in ad seg were inadequate.  The Secretary of Corrections rationally responded that Mr. Love had been provided due process, had been fully advised of the reasons for his continued segregation, and had "offered no credible evidence or argument" suggesting "the facts relied on to make the placement are inaccurate."  Complaint (Doc. 1), Attach. Grievance Response dated 4/17/06.  In sum, the court concludes that even if the existence of a liberty interest is presumed, plaintiff has not alleged a denial of procedural due process.  Plaintiff's conclusory allegations of fabrications and conspiracies are simply insufficient to call into question the findings of the ASRB.

### D.   DISCIPLINARY ACTION FOR THREAT AND FORGERY

Plaintiff does specifically challenge two disciplinary actions taken against him which have formed at least part of the basis for his continued designation as a security risk.  One occurred in March, 2002, and involved charges that Mr. Love had threatened a female mental health staff member named Clark and forged her signature.  Plaintiff received notice of the charges in a Disciplinary Report (DR) written by Ms. Clark stating Love had forged her signature on a document which made it appear they were having a relationship, and then attempted to intimidate her with the document.  Plaintiff does not deny that the document existed, that he took it to Ms. Clark, that he tried to talk to her about it and the effect it would have on her job, and that she insisted he

leave.  He claims only that Ms. Clark lied in the DR and it was her signature.  He also asserts he was denied due process because the forged document, which he claims would have proven the signature was hers and not his, was not produced.

Contrary to Mr. Love's conclusory, self-serving assertions of innocence, he was found guilty of the disciplinary infractions including having forged Ms. Clark's signature.  The substantive decision to find him guilty was rendered after a hearing and based upon "some" evidence: the testimony of Ms. Clark[11].  The disciplinary findings and proceedings have never been overturned on administrative appeal or in state court.  Plaintiff does not allege sufficient facts indicating either that he was denied due process in connection with these proceedings or that the decision was arbitrary or capricious.  Accordingly, the court finds there was nothing improper in using this information as a basis for security classification decisions in plaintiff's case.

In any event, the statute of limitations for seeking relief based upon this particular disciplinary incident and proceedings has expired.

### E.   DISCIPLINARY ACTION FOR LEWD ACTS

The second disciplinary action specifically challenged by

---

[11]

Plaintiff cannot successfully challenge substantive decisions by simply calling the victims "liars" and the hearing officers "co-conspirators."  He must, instead, describe some factual evidence tending to discredit the findings.  He provides no factual allegations whatsoever that dispute the finding of guilty in this proceeding.

plaintiff was initiated against him in July, 2006. In this DR, Mr. Love was written up by Nurse Burcher for lewd acts based upon her observation of him masturbating before his window while she and two other nurses walked by as they were leaving the building. Plaintiff argues that lewd acts require intent, and he had none. He also argues the nurses were at fault rather than him, because they were "peeping" in his window and sexually harassing him. In support of his arguments, Mr. Love alleges prison regulations prohibited him from covering his window, and he was not expecting to be viewed by the nurses as they were walking with their backs to the inmates' windows; however, they turned around and looked in his window, invading his privacy.

Mr. Love's arguments that the nurses were at fault are simply ludicrous. The finding that plaintiff caused the nurses to turn and look at him as he masturbated was supported by some evidence: the reports and testimony of the nurses[12].

Love also challenges this disciplinary action and the reasons for his continued ad seg by stating he has never been charged or convicted of a sex crime. Even accepting this statement

---

[12] Plaintiff emphasized that one nurse, Ms. Morris, said she saw nothing and did not testify at the hearing; however his other allegations and filings indicate the three nurses wrote DR's based on the incident, but duplicate ones were dismissed. Plaintiff also claims Nurse Todd lied when she testified he caused the nurses to turn around by knocking on his window, and points out that Nurse Morris and Nurse Beecher did not state "in their DRs" that anybody knocked on the window. His allegations and exhibits confirm that none of the nurses mentioned his knocking on the window in their DRs; but when the question was asked at the hearing, one of the nurses testified they had turned around because he knocked on his window.

as fact, the lack of criminal action against Mr. Love for sex crimes does not preclude the finding that he violated prison regulations by performing lewd acts or that he is threatening to female staff at the prison.

Plaintiff additionally claims the hearing officer was biased and knew Nurse Todd lied, but found Love guilty "out of retaliation . . . (for EDCF)." Mr. Love alleges his appeal was denied, and claims this also was retaliation and orchestrated to make him appear to be a sexual threat to justify illegally holding him in Supermax. He claims the affirmance of the proceedings by the SOC on September 21, 2006 was "more retaliation." All plaintiff's allegations of lying and retaliation are nothing more than self-serving conclusions supported by no facts whatsoever. As such, they entitle him to no relief.

The court finds there is no showing that procedural due process was denied in connection with this disciplinary action. Mr. Love was found guilty after a hearing, the disciplinary proceedings have not been overturned either administratively or in state court, and Love's arguments to counter the findings are not supported by facts. Accordingly, the court concludes the decision of the disciplinary hearing officer is not shown to have been arbitrary or capricious; and relying upon this DR as a basis for Mr. Love's security classification was not improper.

5.    **CLAIMS OF RETALIATION**

Mr. Love makes conclusory claims of retaliation. "[P]rison

officials may not retaliate against or harass an inmate because of
the inmate's exercise of his constitutional rights. . . .
[However,] [a]n inmate claiming retaliation must allege specific
facts showing retaliation because of the exercise of the prisoner's
constitutional rights." <u>Fogle v. Pierson</u>, 435 F.3d 1252, 1263-64
(10th Cir. 2006), <u>cert</u>. <u>denied</u>, 127 S.Ct. 675 (Nov. 27, 2006),
*citing* <u>Peterson v. Shanks</u>, 149 F.3d 1140, 1144 (10th Cir.
1998)(quotations omitted)(emphasis in original).  To state such a
claim, plaintiff must at least initially make allegations
supporting circumstantial evidence of retaliation and eventually
prove that "but for" the retaliatory motive, the incidents to which
he refers, here the disciplinary actions and his segregation, would
not have taken place.  <u>Mt. Healthy City School Dist. Bd. of Ed. v.</u>
<u>Doyle</u>, 429 U.S. 274 (1977); <u>Smith v. Maschner</u>, 899 F.2d 940, 949-50
(10th Cir. 1990).

Mr. Love's allegations of retaliation are that on the same
day he sent his 1983 complaint to be filed, July 27, 2006, "EDCF
retaliated" by giving him a DR for lewd acts.  However, he states
in an exhibit that he hurried to mail his federal complaint on the
day the incident occurred indicating he was charged with the
misconduct before he submitted his complaint for mailing.  In any
event, the disciplinary action was pursuant to due process and
based upon some evidence.  Thus, plaintiff cannot show that he
would not have been disciplined "but for" the retaliatory motive.

Mr. Love alleges he has been denied medical care in

retaliation[13].   In  support  of  this  claim,  he  alleges  that  on
September  21,  2006,  the  SOC  designee  wrongfully  denied  his
grievance "against the nurses of C.C.S for denying adequate medical
care" and  found  Love  "continues  to  receive  medication  for  his
allergy."   Plaintiff  claims  that  same  day  (9/21/06)  nurses
retaliated by  denying  him  allergy  medication.   Contrary  to  his
conclusory claims, plaintiff's exhibits indicate some delay in his
receiving  his  allergy  medication  resulted  from  his  failure  to
follow procedures by going to sick call to have allergy medicine
renewed and not wanting to pay $2.00 to renew his medication.  The
facts alleged and exhibits provided by plaintiff in no way indicate
that  he  would  not  have  been  denied  medication  "but  for"  a
retaliatory motive.

Plaintiff's  other  claims  of  retaliation  against  him  for
filing  lawsuits  and  his  request  for  an  injunction  to  prevent
defendants  from  retaliating  against  him  for  filing  the  instant
complaint are  not  supported  by  any  factual  allegations  whatsoever.

6.     **OTHER CONCLUSORY CLAIMS**

Plaintiff  repeatedly  states  that  prison  officials  have

---

[13]
Mr. Love had previously filed grievances claiming failure to provide proper medical attention on May 10, 2006.  His exhibits further indicate he has asked for allergy tests, diabetes tests, and heart tests, and has received 4 EKGs and a diabetes test.  He does not allege that these tests were prescribed, or that he presented such obvious symptoms as would support a claim of deliberate indifference to serious medical needs.  In sum, his filed materials indicate he has received medical care, rather than deliberate indifference to any serious medical needs.

conspired against him, fabricated information, discriminated against him, and interfered with his access to the courts. However, these statements are nothing more than conclusory allegations with no, or insufficient, facts alleged in support.

Plaintiff's allegations of interference with his access to the court fall far short of being sufficient to state a constitutional claim in that he fails to allege that he suffered any prejudice as a result. See Lewis v. Casey, 518 U.S. 343, 351 (1996) (holding that an inmate alleging the denial of meaningful court access must establish not only the inadequacy of legal materials available to him, but also that the alleged shortcomings hindered his efforts to pursue a legal claim). In order to state such a claim under the Sixth Amendment, plaintiff must show that an action filed by him has actually been dismissed or impeded due to defendants' actions or inactions. Plaintiff makes no such showing. Instead, he complains of a few days' delay in receiving requested copies or in mailing items. In one exhibited administrative response to a grievance filed by him complaining of a brief delay, he was reasonably instructed by prison officials to submit his requests a few days in advance.

Plaintiff claims he is being discriminated against because he is refused one-on-one meetings with women mental health professionals and women in segregation reviews. Plaintiff has no constitutional right of access to female correctional or mental health counselors, particularly in light of prison records exhibited by him, which indicate he has a history of improper

20

conduct toward female staff members.

7.     **CONDITIONS OF CONFINEMENT CLAIMS**

Mr. Love has failed to state a claim that his extended detention in ad seg violates due process.  He also generally contends that his lengthy detention in ad seg under conditions alleged to be physically and psychologically unhealthy amounts to punishment in violation of the Fifth, Eighth, and Fourteenth Amendments.  "To succeed on an Eighth Amendment claim (of cruel and unusual punishment), a plaintiff must allege facts demonstrating that 'the deprivation is sufficiently serious' and that prison officials acted with 'deliberate indifference to inmate health or safety.'  Fogle, 435 F.3d at 1260, *citing* Perkins, 165 F.3d at 809.

Plaintiff does not allege he is denied all outdoor exercise, which has been recognized as a arguable Eighth Amendment claim.  See Fogle, 435 at 1260.  Instead, he complains that outdoor exercise is limited to one hour a day, five days per week.  This allegation, even taken as true, fails to state a claim of cruel and unusual punishment because it does not suggest a "sufficiently serious" deprivation or risk to inmate health or safety.  The following allegations fail to state a claim for the same reason: that the inside exercise room has no bathroom, does not meet unspecified "height requirements," and has no opening in the ceiling; that plaintiff is escorted to an exercise cage and to the shower; is not allowed to shower every day, and is not allowed to participate in food drives.

Plaintiff argues his constitutional right to equal protection has been violated because in ad seg he is treated differently than inmates in general population. "Equal protection "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). In order to succeed on such a claim, Mr. Love would have to show that he is "similarly situated" to those general population inmates. Fogle, 435 F.3d at 1261. Plaintiff is "by definition, not similarly situated to general population inmates during his time in administrative segregation." Id. Consequently, his allegations of being treated differently than general population inmates fail to state a claim. Those allegations include not being allowed the same access as inmates in general population to the following: use of recreation equipment or engagement in team sports; meals that are always hot; canteen items; legal materials, law library, and typewriters[14]; contact visits and contact with other inmates; taking photos; minimum wage jobs; clothing to wear; privacy to talk to mental health and dental professionals, and allowing everyday cleaning of cells.

Many of plaintiff's complaints regarding conditions are nothing but conclusory statements and are subject to being dismissed for failure to allege sufficient facts in support of a federal constitutional violation. These allegations include:

---

[14]     As discussed earlier, simply alleging inadequacy of available legal materials is not sufficient to state a claim of denial of access.

participation in religious activity is not allowed; inmates with contagious diseases are not separated from healthy ones; parole is negatively impacted; the program to reintegrate ad seg inmates with general population is biased and inadequate; the majority of inmates "illegally detained" in ad seg are black and Mexican; most whites are chosen above others to go to the IMU program; only about 9 to 12 inmates of the 384 in Supermax are in the IMU program; whites are given jobs "unrestrained" while all blacks and Mexicans are restrained first; EDCF officials deliberately provoke violent incidents in ad seg; and EDCF officials refuse to release inmates in ad seg "pursuant to federal law."

Some of these allegations, such as not being allowed to participate in religious activity, might present a federal constitutional claim if sufficient facts were alleged in support. However, Mr. Love does not allege what religion he practices, or in what religious activity he was denied participation. Nor does he provide dates of the alleged denial, or the names of defendants who personally participated in the denial. Similarly, Mr. Love does not describe how and by which named defendant or defendants he has been exposed to a contagious disease, his parole has been negatively impacted, he has been harmed by alleged bias and racial discrimination, or a violent incident affecting him was provoked. Furthermore, although Mr. Love often refers to groups in general, such as inmates in ad seg, blacks, Mexicans, and whites; he does not name any of the individuals in those groups and state facts

regarding those individuals in support his conclusory claims[15].

Plaintiff shall be given time to submit the partial filing fee assessed by the court, and to show cause why his claims determined herein to be deficient should not be dismissed for the reasons stated.  If plaintiff fails to submit the fee or respond to this Memorandum and Order within the time provided, this action may be dismissed without further notice.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff is granted thirty (30) days in which to submit an initial partial filing fee of $16.00, and in which to show cause why those of his claims found to be deficient herein should not be dismissed.

**IT IS SO ORDERED.**

Dated this 27th day of April, 2007, at Topeka, Kansas.

<u>s/Sam A. Crow</u>
U. S. Senior District Judge

---

[15]

Plaintiff's remaining claims include confinement alone in his cell for 23 hours a day; eating all meals alone; communication between inmates limited to yelling between cells, which results in disturbing noise levels; the unit smelling like urine and feces due to inmates throwing these substances on the run; unclean and unsanitary outdoor cages; and filthy cell vents.